Arthur CARMONA; Veronica Sandoval Carmona, Plaintiffs—Appellants,

v.

CITY OF COSTA MESA; Costa Mesa Police Department; City of Irvine; City of Irvine Police Department, Defendants—Appellees,

and

Lawrence Hennen, individually and in his official capacity; Rene Meng, individually and in her official capacity; David Anderson, individually and in his official capacity; Matthew Mahoney, individually and in his official capacity; Gary Harvey; Shiloh Coleman, individually and in his official capacity, Defendants.

No. 03–55227.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 14, 2004.

Decided June 18, 2004.

Robert A. Mosier, Esq., Holly H. McGregor, Mcgregor & Mosier, Laguna Hills, CA, Gregory A. Patton, Law Offices of Gregory A. Patton, F. Edie Mermelstein, Santa Ana, CA, for Plaintiffs–Appellants.

M. Lois Bobak, Esq., Daniel K. Spradin, Esq., Woodruff, Spradlin & Smart, Orange, CA, for Defendants–Appellees.

Before: TASHIMA, MCKEOWN, and BYBEE, Circuit Judges.

## MEMORANDUM [*]

In February 1998, a Denny's restaurant in Costa Mesa, California, was robbed by an armed man. There were two eyewitnesses to the robbery, both of whom described the robber as a Hispanic male. Two days later, a Juice Club store in nearby Irvine, California, was robbed by an armed man. Eyewitnesses to the Juice Club robbery gave varying physical descriptions of the robber, but all agreed that the robber was a Hispanic male in his teens and that he was wearing a baseball cap. One Juice Club employee who was able to describe the cap in detail told the police that it was a Los Angeles Lakers cap with "crazy" writing on the front and emblems on both sides. The police located the cap soon after the robbery.

Several hours after the robbery, a Costa Mesa resident called the police to report that she had seen a young Hispanic male wearing a baseball cap with some sports insignia on it jumping the freeway overpass behind her backyard. Police responded to the neighborhood, encountered plaintiff Arthur Carmona walking down a sidewalk near the freeway overpass, and arrested him in connection with the Juice Club and Denny's robberies. Carmona was 16 years old at the time.

Two Juice Club employees who witnessed the robbery were brought to the place where Carmona was being detained to see if they could identify him.[1] One could not. The other felt 80 percent sure that Carmona was the robber. In order to aid the equivocal Juice Club employee in making his identification, Irvine and Costa Mesa police officers retrieved the distinctive cap worn by the robber, brought it to the scene of the arrest, and placed it on Carmona's head. When the cap was placed on Carmona's head, the equivocal witness felt certain that he was the robber.

Carmona was subsequently convicted of two counts of armed robbery based solely on eyewitness testimony and identifications. He was sentenced to 12 years' imprisonment. No physical evidence linking Carmona to the crime was ever found.

Carmona petitioned for a writ of habeas corpus in California state court alleging that the field identification was so highly

[*] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.

[1.] This practice, commonly referred to as a "showup," is discouraged except in exceptional circumstances because it is a notoriously unreliable means of obtaining an accurate witness identification. *See Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) ("The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned.").

suggestive and unreliable as to violate his right to due process. Three hours before his evidentiary hearing, the state offered to stipulate that Carmona's habeas petition be granted, that his conviction be vacated, and that he be set free, in exchange for Carmona's stipulation that his conviction was not the result of police or prosecutorial misconduct. Carmona was given 20 minutes to review the stipulation and decide whether or not to sign. He decided to sign the stipulation and he was released, having served over two years of his twelve-year sentence. He was then 18 years old.

Carmona and his mother filed this action under 42 U.S.C. § 1983 against the cities of Irvine and Costa Mesa and various individual defendants, alleging that the defendants violated his right to due process when they conducted the highly suggestive field identification. The individual defendants were subsequently dismissed and the city defendants moved for summary judgment. The district court granted the motion on the grounds that Carmona's signing of the stipulation precluded his recovery, and that he had failed to raise a triable issue of fact as to whether the field identification was conducted pursuant to an official policy or practice as required to establish municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). This appeal followed.

We have jurisdiction to review the district court's final order pursuant to 28 U.S.C. § 1291. We review the grant of a summary judgment motion *de novo. United States v. City of Tacoma*, 332 F.3d 574, 578 (9th Cir.2003). We affirm the district court because Carmona failed to raise a genuine issue of fact as to whether the police officers who conducted the field identification were acting pursuant to an official policy or custom.[2]

To establish municipal liability under *Monell*, a plaintiff must show that a municipal agent whose decisions represent official policy caused the deprivation of rights at issue either (1) by enacting "policies [that] affirmatively command that it occur," or (2) by "acquiescence in a long-standing practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) (citations omitted).

Carmona failed to introduce evidence creating a material issue of fact as to whether the Costa Mesa police officer who participated in the field identification was acting pursuant to a municipal policy or custom. Therefore, the district court did not err in granting summary judgment in Costa Mesa's favor.

As to the City of Irvine, Carmona introduced some evidence that the officers involved in Carmona's field identification were acting pursuant to a municipal policy or custom, but not enough to create a genuine issue of material fact. His only evidence tending to show a pre-existing policy with respect to field identifications is the city's Field Identification Admonition Form. That form establishes that the city has a policy that permits officers to conduct one-person field identifications, but it does not create a genuine issue of fact as to whether the permitted field identifications are so "unduly suggestive" as to violate due process. *See United States v. Jones*, 84 F.3d 1206, 1209 (9th Cir.1996) (holding that an identification procedure violates due process where it is "so unduly

---

**2.** Because we affirm the district court on the ground that Carmona failed to show municipal liability, we need not address whether the stipulation was valid or whether the field identification violated Carmona's due process rights.

suggestive as to give rise to a substantial likelihood of mistaken identification").

Carmona also argues that the City of Irvine ratified the use of impermissibly suggestive field identifications when Lt. Allevato, the official spokesman for the Irvine Police Department, endorsed the identification in Carmona's case. But he points to no legal authority for the proposition that Allevato is endowed with policy-making authority. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 124, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (holding that whether an individual is authorized to make policy is a question of state law). Even if he were, Lt. Allevato did not ratify a "longstanding practice or custom." *See Jett*, 491 U.S. at 737, 109 S.Ct. 2702. He defended only the field identification conducted in Carmona's case. Finally, even if Lt. Allevato's testimony could be interpreted as a general policy statement that officers may under some circumstances conduct field identifications that include the use of articles of the perpetrator's clothing, he did not endorse conduct that necessarily violates due process. Courts assess the constitutionality of field identifications, like other highly suggestive lineup procedures, considering the totality of the circumstances. *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Although field identifications that use articles of the perpetrator's clothing may violate due process in some circumstances, *see Foster v. California*, 394 U.S. 440, 443, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969), they do not violate due process in every circumstance, *see Jones*, 84 F.3d at 1209.

Accordingly, the judgment of the district court is AFFIRMED.